UNITED STATES DISTRICT COURT
                             FOR THE
                      DISTRICT OF VERMONT

Lewis H. Elliott,               :
        Plaintiff,               :
                                :
        v.                       :      File No. 1:08-CV-42
                                :
Vermont Department of            :
Corrections, Mike                :
Bellizzi, Peter Canales,         :
John B. Murphy, Steve            :
Wakefield,                       :
        Defendants.              :

            MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
                             (Paper 9)

   Plaintiff Lewis Elliott, a former Vermont inmate proceeding *pro se*, brings this action claiming that while he was in state custody the defendants denied him his First Amendment and due process rights.  Specifically, Elliott alleges that he was denied furlough in retaliation for filing a complaint against his probation officer.

   The defendants now move to dismiss, arguing (1) that they are immune from suit in federal court in their official capacities, (2) that Elliott has failed to identify which of the defendants, if any, denied him his rights, and (3) that Elliott has no liberty interest in furlough.  The motion is unopposed.  For the reasons set forth below, I recommend that the Court GRANT the motion to dismiss, while granting Elliott leave to amend.

## Factual Background

For the limited purpose of ruling on the motion to dismiss, the Court will accept the allegations in the complaint as true. In November 2006, Elliott was convicted of driving under the influence, second offense. He received a sentence of six months to two years, all suspended, with two years probation. On October 28, 2007, he violated his probation, and was subsequently sent to prison.

While still on probation, Elliott's probation officer was defendant Steve Wakefield. According to Elliott, Wakefield threatened "to kick my ass all over St. Johnsbury if I didn't change my behavior." (Paper 4 at 2). When Elliott sought to complain about Wakefield's alleged threat of physical harm, he was advised by his case worker and a prison official to consider moving away from St. Johnsbury so that he could be assigned to a different probation officer.

Elliott did not want to leave his friends and family in St. Johnsbury, so he filed a complaint against Wakefield through the prison grievance system. Since that time, he claims that unidentified individuals have retaliated against him by taking away his "ninety (90) day window." Id. at 4.

The defendants explain that this "window" is a reference to reintegration furlough ("RF"). Elliott claims that denying him access to RF violated his due process rights, and that retaliation for his grievance filing violated his rights under the First Amendment. For relief, Elliott seeks an unspecified damages award.

## Discussion

As noted above, on a motion to dismiss the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). Although the defendants' motion to dismiss is unopposed, the failure to respond does not warrant dismissal if the complaint is sufficient to state a claim on which relief can be granted. McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000); see also Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).

### I. Official Capacity Immunity

The defendants first argue that, insofar as they are

being sued in their official capacities, they are immune from suit under the Eleventh Amendment. The defendants consist of the DOC, a state agency, and DOC employees. The Eleventh Amendment prohibits suits in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress. See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims against state employees sued in their official capacities. See Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2002); Al-Jundi v. Estate of Rockefeller, 885 F.3d 1060, 1065 (2d Cir. 1989).

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress. Indeed, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g). Accordingly, any claims against the DOC, and against the individual defendants in their official capacities, should be DISMISSED.

II. <u>Individual Capacity Immunity</u>

    A. Bellizi, Canales and Murphy

The defendants next argue that the claims against Mike Bellizzi, Peter Canales and John Murphy in their individual capacities should be dismissed for failure to show personal involvement. Although not alleged in the complaint, the defendants informed the Court that Bellizzi is the Superintendent of the Northern State Correctional Facility, Canales is the Chief of the Agency of Human Services Internal Affairs Investigation Unit, and Murphy is the DOC Hearings Administrator.

In cases such as this where liability is asserted under 42 U.S.C. § 1983, personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages against a defendant in his individual capacity. <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977). Here, the complaint does not allege any specific misconduct by these three defendants. The Court should nonetheless consider the possibility of supervisor liability. <u>See</u> <u>Cruz v. Gomez</u>, 202 F.3d 593, 597 (2d Cir. 2000) (courts should construe *pro se* pleadings broadly). At least with respect to Superintendent Bellizzi and Hearings Administrator

Murphy, their positions as administrators make such a claim plausible.

Supervisory officials may not be held liable merely because they held a position of authority. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Black v. Coughlin, 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if he or she 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007).

In this case, Elliott has not set forth any allegations that would satisfy the standard for supervisor liability. Not only has he failed to allege any direct participation in the alleged denials of his rights, he makes no claim that defendants Bellizi, Canales or Murphy had any knowledge of such denials. There is no mention of an impermissible policy or custom, and no factual allegation indicating gross

negligence.  Accordingly, I recommend that the motion to dismiss defendants Bellizzi, Canales and Murphy in their individual capacities be GRANTED.  As set forth below, however, the Court should allow Elliott an opportunity to amend his allegations against these defendants.

    B.  Wakefield

The complaint also fails to allege any specific constitutional violation by defendant Wakefield.  Elliott claims that Wakefield threatened him with physical harm, and that his grievance against Wakefield resulted in having his "ninety (90) day window taken away."  (Paper 4 at 4).  He does not allege, however, that Wakefield had anything to do with the retaliatory actions that arose out of his grievance filing.  I therefore recommend that the Court GRANT the motion to dismiss Wakefield, although again with leave to amend as discussed below.

III.  <u>Right to Due Process</u>

Even assuming, for the sake of argument, that Elliott's allegations showed sufficient personal involvement, the defendants further argue that he had no right to due process because he had no liberty interest in being released on furlough.  To succeed on a due process claim, Elliott must establish (1) that he possessed a liberty interest and (2)

7

that the defendants deprived him of that interest as a result of insufficient process. Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation omitted). To determine whether a prisoner has identified a protected liberty interest, the Court must examine whether the State has created such an interest by statute or regulation and whether the alleged deprivation constitutes an atypical and significant hardship. Sandin v. Connor, 515 U.S. 472, 484 (1995); Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir. 2007) (quoting Tellier v. Fields, 280 F.3d 69, 80 (2d Cir. 2000)).

Here, the Court need not examine the second prong of the due process test, as it is clear that Vermont has not created a liberty interest in reintegration furlough. Under Vermont law, the granting of furlough is entirely discretionary. See 28 V.S.A. § 808; Parker v. Gorczyk, 170 Vt. 263, 268 (1999); Conway v. Cumming, 161 Vt. 113, 118 (1991) (§ 808(a) contains "no limitations on the discretionary authority granted to the Commissioner"). The statute reads, in relevant part: "The department may extend the limits of the place of confinement of an inmate at any correctional facility if the inmate agrees to comply with such conditions of supervision the department, in its sole discretion, deems appropriate for that inmate's furlough."

28 V.S.A. § 808(a). Given that the DOC has unbridled discretion with respect to each furlough applicant, it cannot be argued that Elliott had a legitimate expectation of release entitling him to due process protection. See, e.g., Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Barna v. Travis, 239 F.3d 169, 170-71 (2d Cir. 2001) (New York's parole scheme does not create liberty interest).[1] I therefore recommend that Elliott's due process claim be DISMISSED.

IV. Leave to Amend

The Second Circuit has urged that "when addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). In this case, Elliott has failed to allege sufficient personal involvement on behalf of the individual defendants. His due process claim also falls

---

[1] The complaint alleges that Elliott was not granted RF. It does not suggest that he was released on furlough, and that his furlough was subsequently revoked. Such a fact might change the Court's analysis. See, e.g., Johnson v. Hofmann, 2008 WL 2901329, at *3 (D. Vt. July 22, 2008).

9

short, although clarity on the question of whether furlough was merely denied, as opposed to revoked, might change the analysis.  See footnote 1, *supra*.  I therefore recommend that, while granting the defendants' motion to dismiss, the Court allow Elliott 30 days in which to file an amended complaint.  Failure to file a properly amended complaint within that time period should result in the dismissal of all claims with prejudice.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 9) be GRANTED.  I further recommend that Elliott be allowed 30 days in which to file an amended complaint.  Failure to file a properly amended complaint within that time period should result in the dismissal of all claims with prejudice.

Dated at Burlington, in the District of Vermont, this 5th day of November, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report

to which objection is made and the basis for such
objections.  Failure to file objections within the specified
time waives the right to appeal the District Court's order.
See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1);
Fed. R. Civ. P. 72(b), 6(a) and 6(e).